The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between Plaintiff and Defendant-Employer at all relevant times.
3. Defendant-Employer is a duly qualified self-insurer with Risk Control Services as its servicing agent.
4. The parties stipulated to the wage information based on Plaintiff's W-2 for 1994 which engenders an average weekly wage of $226.48 and yields a workers' compensation rate of $151.06.
5. The parties stipulated to the following medical records:
a. Risk Control Services
b. Triad Therapy Services, Inc.
c. Alan C. Gorrod, MS, OTR/L, CWCE (Occupational Therapist).
d. Triangle Orthopaedic
e. Carteret General Hospital
f. Dr. Kerry C. Willis
g. Dr. Peter Gilmer
h. Vocational Rehabilitation records of Ms. Emily Sanders.
6. The issues for determination are:
 a. Is Plaintiff suffering from an occupational disease or has she sustained an injury by accident?
 b. If the answer to (a) is yes, has Plaintiff lost any wage earning capacity or suffered permanent damage to any organ or part of her body as a result of a compensable condition? If so, to what extent?
c. To what compensation, if any, is she entitled?
 d. Is Plaintiff entitled to payment for ongoing medical and rehabilitation expenses related to her compensable injury?
The objections to the testimony of Dr. Alan Gorrod, made by Plaintiff are hereby OVERRULED.
The Plaintiff filed her claim under the name of Janice Rowland, which is how she was known during her employment with Defendant-Employer. During the pendency of this claim, she resumed the use of her maiden name of Richmond, and requested that the caption be amended to reflect that change. Accordingly, although Janice Rowland and Janice Richmond are one and the same person, she will be referred to in this document as Janice Richmond.
***********
The Full Commission adopts the findings of fact of Deputy Commissioner Mary Moore Hoag as follows:
FINDINGS OF FACT
1. Plaintiff, at the time of the hearing, was a forty-seven (47) year old female who had not been employed since she left the Defendant-Employer's employ on December 30, 1994. Plaintiff did not graduate from high school, but obtained her GED in about 1978. Prior to working for Defendant-Employer, she had been employed as a waitress, as a bank teller from 1987 to 1990, and for several years prior to 1987, she had been a homemaker.
2. From July, 1990 until December 30, 1994, Plaintiff was employed by Defendant-Employer, Creative Outlet, in its sewing plant in Morehead City. The plant manufactures hospital garb, warm-up suits, and various other items as ordered by its customers. Plaintiff's job was operator of an overlock machine.
3. In her job as an overlock operator, Plaintiff performed several tasks, including, most frequently, setting cuffs and sleeves. Setting cuffs involved stretching the knitted cuff material and holding it stretched while guiding it through the sewing machine. Plaintiff was skilled at setting cuffs. She was able to set over 100 cuffs per hour (or 800 per day), trimming them with the scissors in her right hand. Plaintiff is right-hand dominant.
4. Other tasks required by the overlock operator job were closing side seams, joining shoulder seams, end seaming, crotching and sewing 4-panel scrubs. All of these tasks were done by Plaintiff on a production basis and involved repetitive movements of both of her hands.
5. Prior to working for Defendant-Employer, Plaintiff had no problems with her hands or arms. In approximately July, 1994, she began having symptoms of pain in her dominant right hand, including pain, numbness and weakness.
6. On November 22, 1994, Plaintiff was referred by Defendant-Employer for medical treatment to Dr. Kerry Willis, a family physician and company physician in Beaufort, North Carolina. Dr. Willis diagnosed Plaintiff with tendinitis, prescribed pain medication and gave her a splint for her right hand. After Plaintiff did not improve, Dr. Willis recommended that she be restricted to light duty. Dr. Willis did not have an opinion about the cause of her condition, and indicated that he would be inclined to defer his own opinion to that of an orthopaedic surgeon.
7. After he saw her three times and she did not improve, Dr. Willis recommended that Plaintiff be seen by an orthopaedic surgeon. An appointment was made with Dr. Jeffrey K. Moore in Morehead City. When Defendant-Employer refused to approve payment, Dr. Moore would not see Plaintiff.
8. Thereafter, Plaintiff sought medical treatment on her own and was seen by Dr. Peter Gilmer, an orthopaedic surgeon in Durham. Dr. Gilmer has been her primary treating physician since February 6, 1995.
9. Dr. Gilmer diagnosed Plaintiff as having tendinitis in both hands, and recommended additional testing to determine if she also had carpal tunnel syndrome. Nerve conduction studies verified mild carpal tunnel syndrome on the right. Plaintiff's tendinitis and carpal tunnel syndrome were caused by her repetitive work. There were no other causal factors for tendinitis or carpal tunnel syndrome in her history.
10. Dr. Gilmer recommended that Plaintiff not return to her previous employment or to any repetitive motion type of job, as a matter of medical necessity. He suggested that she contact a vocational rehabilitation office in order to obtain assistance with a long-term career change.
11. In April, 1995, Plaintiff met with Emily Sanders, a vocational rehabilitation counselor assigned to her case. Ms. Sanders evaluated Plaintiff's medical situation as well as her vocational interests and aptitudes, and devised a rehabilitation program. At the time of Ms. Sanders' deposition in December, 1995, Plaintiff was in her second quarter as a full-time student at Carteret Community College, and was expected to complete the program by August, 1996, at which time placement activities would begin.
12. There may have been some clerical jobs available that plaintiff could have done without additional schooling. However, there was no evidence that any particular job was available for the Plaintiff, or that she could have been hired for any such job.
13. Plaintiff is suffering from bilateral tendinitis, and right hand carpal tunnel syndrome caused by repetitive motion from her job at Creative Outlet, and has been so suffering since at least the middle of 1994.
14. Plaintiff's job as an overlock operator placed her an increased risk for the development of tendinitis and carpal tunnel syndrome above members of the general public not so employed.
15. Plaintiff filed her claim within two years of being first advised by a doctor of the nature and cause of her condition.
16. As a result of her carpal tunnel syndrome, Plaintiff is and has been unable to work and earn wages of any kind in her employment with defendant-employer or with any other employer, beginning December 30, 1994.
17. Defendant has presented insufficient evidence that there exists any available job that Plaintiff could perform, or that she would be hired to perform such job, in light of her impairment, work restrictions and education.
18. There was no competent, credible evidence presented at the hearing or in other testimony that any causal factor other than Plaintiff's job contributed to the development of her condition.
19. Plaintiff's average weekly wage while working with Defendant-Employer was $226.48, yielding a compensation rate of $151.06
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has contracted the compensable occupational diseases of tendinitis and carpal tunnel syndrome. N.C. Gen. Stat. § 97-53 (13).
2. Plaintiff's employment with defendant-employer exposed her to a greater risk of contracting the tendinitis and carpal tunnel syndrome in her hands than a member of the general public and significantly contributed to the development of tendinitis and carpal tunnel syndrome. Rutledge v. Tultex, 308 N.C. 85,301 S.E.2d 359 (1983).
3. As a result of her compensable occupational disease, Plaintiff has been totally unable to earn wages of any kind in employment continually since December 30, 1994. She is entitled to benefits for total disability at the rate of $151.06 per week, from December 30, 1994, to the present and continuing until further Order of the Commission, or until she returns to work. N.C. Gen. Stat. § 97-29.
4. Plaintiff has the initial burden of proof on all issues necessary to establish entitlement to benefits. Once having shown that she has contracted an occupational disease, Plaintiff was required to show that she had lost wage earning capacity as a result. Russell v. Lowe's Prod. Distrib., 108 N.C. App. 762,425 S.E.2d 454 (1993); Bridges v. Linn-Corriher, 90 N.C. App. 397,368 S.E.2d 388, cert. denied, 335 N.C. 171, 373 S.E.2d 104 (1988). The Russell Court listed four means by which a Plaintiff may satisfy the initial burden: (1) medical evidence establishing inability to do work in the prior employment or in any employment; (2) inability after a reasonable search to locate suitable work; (3) futility of seeking other employment due to such factors as lack of education or experience; and (4) obtaining employment but earning less than at the prior employment. Id.
5. Once a Plaintiff has established loss of wage earning capacity by any of these methods, the burden shifts to the defendant to produce evidence that there is work that the plaintiff can do, and that she will be hired to do the job. Seee.g. Kennedy v. Duke University Medical Center, 101 N.C. App. 24,398 S.E.2d 677 (1990). Evidence that a job is available for a short period of time does not establish that the plaintiff regains the ability to earn wages. Daughtry v. Metric Construction Co.,115 N.C. App. 354, 146 S.E.2d 590 (1994). Plaintiff established by a preponderance of the competent, credible testimony of record that she was medically unable to work, that she had not been released to work.
6. Plaintiff is entitled to medical treatment for her compensable, occupational disease, to the extent that it is designed to effect a cure, give relief or lessen her period of disability, including all treatment rendered by and/or recommended by Dr. Peter Gilmer, who is authorized to be the Plaintiff's treating physician. N.C. Gen. Stat. § 97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to Plaintiff temporary total disability benefits in the amount of $151.06 per week from December 20, 1994 and continuing until further order of the Commission or until she returns to work, subject to the attorney's fee hereinafter awarded.
2. Attorney's fees in the amount of 25% of the accrued compensation shall be deducted from the total and be paid directly to Plaintiff's attorney. In the future, every fourth compensation check shall be forwarded directly to Plaintiff's attorney.
3. Defendant shall provide and pay for such medical treatment as is recommended by Plaintiff's physicians for her occupational disease, and shall pay all unpaid medical expenses and reimburse her for all past treatment related to the same, when such medical bills have been submitted and approved by the Commission.
4. Defendant shall pay the costs due this Commission.
 S/ _______________ WANDA BLANCHE TAYLOR DEPUTY COMMISSIONER
CONCURRING:
S/ _______________ DIANNE C. SELLERS COMMISSIONER
S/ _______________ PHILLIP A. HOLMES DEPUTY COMMISSIONER
WBT/cbd